Tbe opinion of tbe Court was delivered by
Withers, J.
Tbe plaintiff’s claim was founded upon fourteen bales of Sea Island cotton, sent to tbe defendants, as factors, on tbe 8tb December, 1855, received in two or three days by them, stored by tbe wharfinger, and burned on tbe night of Saturday, January 6, 1856.
Of three counts in tbe plaintiff’s declaration, one is for money bad and received to tbe plaintiff’s use, which, being wholly unsupported by any proof, may be laid out of view.
One other count is for- tbe value of tbe fourteen bales of cotton sold by tbe defendants.-
It is earnestly contended that this count is sustained by tbe evidence. We must, therefore, examine that question.
On tbe 4th January, 1856, tbe defendants addressed a letter to tbe plaintiff, saying as follows: “We sold this morning your" nine bales fair at twenty-nine cents, to James F. Green & Son; and your fourteen bales G. to E. J. W. Morse & Co., at thirty-four cents. As soon as these cottons have been examined and re-weighed, we will send you tbe account sales. In tbe mean time, if you desire it, you will draw on us for what funds you may desire.” A list, containing weights of tbe fourteen bales respectively, was enclosed, footing up, at thirty-four cents per pound, seventeen hundred and sixty-four dollars and sixty cents.
*213 Again, on tbe 25tb January, tbe defendants said, in a letter to tbe plaintiff, “ as your agents we sold your cotton to Mr. Morse before tbe fire, and it was bis cotton and not yours, when it was burnt, and be owes you for it; but as be refuses to pay we have ordered bim to be sued.” They did sue bim in tbe plaintiff’s name, and be ordered tbe action to be discontinued.
If tbis were all tbe evidence, upon tbe count for cotton 'sold, it would maintain it. But notwithstanding the parties verily believed tbe cotton was actually sold to Morse, it was a clear misconception, too obvious to any legal mind, which adverts to tbe Statute of Frauds and Perjuries, to warrant any discussion. . On tbe 3d January, Morse made a1 bid for tbe cotton, and tbe principal clerk of tbe defendants agreed to accept it. Next day, tbe 4th January, a bill of sale of tbis cotton to Morse was made, and being entered in tbe defendants’ books, as was usual, was placed upon their file — Morse paid nothing — received nothing — signed no memorandum of tbe bargain.. Tbe cotton was to be examined, to ascertain conformity to samples', .and to be re-weigbed. It was, in no sense, delivered.- There was, then, in point of fact, no sale, according to law.. And tbe plaintiff’s counsel is quite too much skilled in. tbe law, to tbink, or to contend, that there was; but be insists that tbe letters already cited, connected with tbe fact, that they authorized tbe plaintiff to draw upon them by reason of tbe sale announced, and considering bis letter to them of 4th .February, 1853, that be never wished to draw in advance of .funds in their bands, authorized bim to regard tbe sale as made; so far as be was concerned, however tbe matter might be. as between tbe defendants and Morse : ( Vide first ground of appeal.)
To test tbis upon general reasoning, let us consider that on tbe 4th January, 1856, tbe plaintiff was still tbe owner of tbe cotton, in tbe bands of bis agents, (these defendants,) and *214 could have controlled tbe disposition of it. If tbe defendants were liable to bim for tbe value of tbe goods, they must have been so whether tbe fire bad destroyed it or not; they must have been liable whether it was actually sold or not, because they said it was, and thought so. Suppose it bad not been destroyed, and that Morse bad failed, or refused to take it, whose cotton would it still have been? Tbe plaintiff’s undoubtedly. He could have directed it to be bolden for a higher price; be could have withdrawn it, upon paying liens, from tbe custody of tbe defendants, and placed it in other, bands. He-could have tbe enhanced value of it, if it bad been sold to some other, on default or failure of Morse, for forty instead of thirty-four cents per pound. So that it was not tbe transaction with Morse that caused tbe plaintiff’s loss, but tbe fire, for which no blame or liability is imputed to tbe defendants. Tbe only case cited in support of tbe count now under consideration is that of Le Fevre vs. Lloyd, adm’r, 5 Taunt. 748, (S. C. 1 Com. Law R., 250,) and that case is clearly distinguishable from this. A broker to sell, bad sold and delivered tbe goods, and drawn on tbe purchaser in favor of tbe owner of tbe property, at two months, and remitted tbe bill to tbe plaintiff. It was dishonored by tbe drawee, and tbe broker would have assumed tbe ground that be, as tbe drawer, was in law tbe plaintiff himself, for be only did what tbe plaintiff, if present in London (tbe place of tbe transaction), would himself have done, in tbe usual course of such transactions. Tbe broker was held responsible, as drawer, upon this bill, for these reasons: tbe broker, by drawing this bill, put an end to all doubt as to tbe buyer’s responsibility. Tbe vendor, upon receiving it, in -consequence of bis good opinion of Lloyd,’ tbe defendant,'; dismissed from bis mind all care about tbe solvency of tbe purchaser. Tbe distinguishing facts in that case are obvious; tbe goods were actually sold and delivered, and as a substi *215 tute for them, and as a clear indication that the transaction was closed, a bill was remitted and received, and relied on. Here nothing of this kind was done; no damage accrued to the plaintiff in the negotiation with Morse, called a sale by-mistake ; his goods remained in possession, and subject to his order; he did not draw for the proceeds, and thereby incur any liability. If he had done so, ’tis unnecessary for us to consider now what law would have thereupon arisen.
So it must be evident that the jury having found against the plaintiff upon the count for cotton sold, under proper instruction from the Court, is not matter of just complaint.
We think, with the presiding Judge, that the claim for damages for default to insure was the strongest position of the plaintiff, and perhaps if he had persuaded the jury to be with him on that ground, we should have left the result undisturbed. v
But it was necessarily a question for the jury, and there was no misdirection. Whether the defendants had committed a breach of contract, in that respect, was matter for inference from circumstances proved. When we remember, that in the course of eleven years more than five hundred bales of cotton were sold by Colcock, and by him and his co-partner for the plaintiff, amounting to so much as fifty-five thousand dollars, and but two instances of a charge for insurance were shown, and but one of them was admitted to have been intentionally made, and the last of them in January, 1855, about a year before the disaster which gave rise to this action; .that there is no evidence of instruction, at any time, to insure; that the general tenor of the plaintiff’s letters of instruction was to direct an instant or a speedy sale; that in an interview, after the destruction of the cotton, Colcock affirmed that they were not told to insure, and the plaintiff, not disputing that, said, “ I tell you to do it now.” Considering such facts as these, we should consider ourselves unwar *216 ranted in reversing tbe verdict of a jury, Having such a basis to rest upon.
Though regretting the misfortune of the'plaintiff, we must adhere to the legal rights of the parties, and recognise the proper function of the jury; and are constrained, therefore, to refuse the motion in this cause, and
It is ordered accordingly.
Wardlaw, Whether, Glover,'and Muhro, JL, con-, curred.

Motion refused.